```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
U2 HOME ENTERTAINMENT, INC.,             :
                                         :
                    Plaintiff,           :   04 Civ. 1233 (DLC)
        -v-                              :
                                         :   OPINION AND ORDER
LAI YING MUSIC & VIDEO TRADING, INC.,    :
and WEI PING YUAN,                       :
                                         :
                    Defendants.          :
-----------------------------------------X
```

Appearances:

For the Plaintiff:

Harvey Shapiro
Sargoy, Stein, Rosen & Shapiro
1790 Broadway
New York, New York  10019

For the Defendants:

Harold Wm Suckenik
Allen Wu
Wu & Kao, P.L.L.C.
747 Third Avenue, 22d Floor
New York, New York  10017

DENISE COTE, District Judge:

On May 25, 2005, this Court issued an Opinion and Order (the "Opinion") granting summary judgment to plaintiff U2 Home Entertainment, Inc. ("U2"), and awarding U2 $7,050,000 in statutory damages and $300,000 in civil contempt fines in this copyright infringement action. U2 Home Entm't, Inc. v. Lai Ying Music & Video Trading, Inc., No. 04 Civ. 1233 (DLC), 2005 WL 1231645, at *9 (S.D.N.Y. May 25, 2005).[1]  The Clerk of Court

---

[1] Familiarity with the Opinion is assumed. The Opinion also awarded U2 attorney's fees in an amount to be determined, but U2 later withdrew its request for attorney's fees.

entered judgment on May 31.  On June 10, defendants filed a motion to amend, modify, or withdraw the judgment pursuant to Rule 59, Fed. R. Civ. P.[2]  That motion was fully submitted on August 26 after this Court granted the defendants' untimely request to extend their reply date.  For the following reasons, the motion is denied.

Rule 59(e) "does not prescribe specific grounds for granting a motion to alter or amend an otherwise final judgment." Munafo v. Metro. Transit Auth., 381 F.3d 99, 105 (2d Cir. 2004).  Within the Second Circuit, "district courts may alter or amend judgment to correct a clear error of law or prevent manifest injustice." Id. (citation omitted).  The standard for a motion to alter or amend a judgment under Rule 59(e), Fed. R. Civ. P., is the same as the standard for a motion for reconsideration under Local Civil Rule 6.3.  See Cohen v. Koenig, 932 F. Supp. 505, 506 (S.D.N.Y. 1996).  Thus, a motion pursuant to Rule 59(e) should be granted only where the moving party demonstrates that the Court has overlooked factual matters or controlling decisions that were presented to it on the underlying motion and that could change the conclusion reached by the court.  See Local Rule 6.3; Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Courts narrowly construe this standard and apply it strictly against the moving party so as to "dissuade repetitive arguments on issues that have already been considered fully by the court." Caleb &

---

[2] The motion was defective, as the defendants filed only an attorney declaration with their motion papers, but did not file a memorandum of law.

2

Co. v. E.I. DuPont De Nemours & Co., 624 F. Supp. 747, 748 (S.D.N.Y. 1985). Generally, the moving party may not "advance new facts, issues or arguments not previously presented to the Court." Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Maryland, 768 F. Supp. 115, 116 (S.D.N.Y. 1991). The decision to grant or deny the motion, however, is within the sound discretion of the district court. See Devlin v. Transp. Communications Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

The defendants do not address the standard that applies to their Rule 59 motion. It is worth noting that the defendants not only make new arguments in their Rule 59 motion that were not made in their opposition to U2's summary judgment motion; as discussed below, they again make new arguments in their reply to U2's opposition to this motion. "New arguments first raised in reply papers in support of a motion will not be considered." Domino Media, Inc. v. Kranis, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998).

The Opinion held that "the importation of copies into the United States of a work manufactured in a foreign country can form the basis for a copyright infringement claim by an exclusive licensed U.S. distributor without regard to the first sale doctrine." U2, 2005 WL 1231645, at *4 (citing Quality King Distribs. v. L'anza Research Int'l, Inc., 523 U.S. 135, 148, 152 (1998)). The defendants, citing a concurrence,[3] contend that the

---

[3] The defendants cite Justice Ginsburg's concurrence, which states: "I join the Court's opinion recognizing that we do not today resolve cases in which the allegedly infringing imports

3

Opinion misinterpreted Quality King. The defendants made no arguments relating to the first sale doctrine during summary judgment practice, and never cited Quality King. In any event, defendants merely suggest that the portion of Quality King on which the Opinion relied was dicta; they do not advance any argument why the Opinion's analysis on this point, which extended beyond merely citing Quality King, was clear error.

The defendants contend that the unauthorized imported copies of films were manufactured by the Chinese copyright holder, and therefore are "authorized." They did not make this argument during summary judgment practice, and indeed, they admitted that their copies had not been lawfully obtained for resale in the United States. U2, 2005 WL 1231645, at *5.

The defendants also argue that the Copyright Act does not apply to this case, and that the copyright law of the People's Republic of China should apply instead. The defendants never made this argument during summary judgment practice; indeed, their opposition to summary judgment assumes throughout that the Copyright Act applies, as it cites the Copyright Act numerous times. Regardless of this fact, the argument is manifestly contrary to law, see 17 U.S.C. § 602(a),[4] and the defendants

---

were manufactured abroad." Quality King, 523 U.S. at 154.

[4] Section 602(a) provides:
Importation into the United States, without the authority of the owner of copyright under this title, of copies or phonorecords of a work that have been acquired outside the United States is an infringement of the exclusive right to distribute copies or phonorecords under section 106, actionable under

4

provide no analysis to support this argument.

The defendants object to the civil contempt fine of $300,000, equivalent to maximum statutory damages for two infringed items. "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." <u>Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.</u>, 369 F.3d 645, 655 (2d Cir. 2004) (citation omitted). Under this standard, the contempt fine levied in the Opinion is appropriate. The March 30, 2001 permanent injunction ("Injunction") to which the parties stipulated unambiguously enjoined Lai Ying from infringing U2's exclusive rights in motion pictures "including but not limited to those identified in . . . the Complaint," as well as from "importing . . . or selling, renting or otherwise distributing . . . any unauthorized videocassette or videodisc copies" of U2's films. <u>U2</u>, 2005 WL 1231645, at *1. Proof that the defendants violated the Injunction was clear and convincing, as it is undisputed that the U.S. Marshals Service executed Orders of Seizure on February 18 and August 11, 2004, and U2 investigators made purchases between those seizures, yielding a total of 174

---

section 501.
17 U.S.C. § 602(a) (emphasis supplied). For this reason, the defendants' repeated emphasis on the distinction between "pirated" copies and "unauthorized" copies is immaterial.

5

unauthorized copies of 49 different U2 film titles.  Id. at *2.
It is beyond dispute that the defendants did not diligently
attempt to comply with the Injunction in a reasonable manner.
After U2 commenced this action and the U.S. Marshals Service
executed the first Order of Seizure, the defendants continued to
sell U2 films for months during the pendency of this lawsuit, as
evidenced by the recovery of scores of unauthorized films through
purchases by U2 investigators and a second search by the U.S.
Marshals.  Id.  Indeed, the two films for which the defendants
received a contempt fine -- "The Death Curse" and "Men Suddenly
in Black" -- were recovered in the August 11 seizure by the U.S.
Marshals, with copies of "Men Suddenly in Black" having been
recovered previously in the February 18 seizure and in purchases
by U2 investigators following that search.  Id. at *2 nn.1-3.

The defendants' contempt arguments center on a claim that
the compensatory contempt fines were not well calibrated to the
amount of damages that U2 suffered.[5]  The defendants fail to
mention that the reason for assigning maximum damages was that
the defendants caused "the absence of access to [their] business
records," which made it "difficult to calibrate the sanction to
the damages suffered from the contemptuous conduct" and therefore
"appropriate to apply the statutory formula for damages as a

---

[5]  The defendants do not challenge the amount of statutory
damages awarded to the plaintiffs on 47 of the 49 film titles at
issue.

6

reasonable proxy." U2, 2005 WL 1231645, at *7.[6] The defendants offer no reason why this analysis is clearly erroneous. The defendants also do not argue that they are unable to pay the contempt fine.

The defendants admit that U2's copies came from an "authorized" source in China, but argue that U2 does not have the right to file applications for copyright registration on behalf of foreign copyright holders. The defendants did not make this argument on summary judgment, and in any event, it is manifestly contrary to law. See 17 U.S.C. § 408(a).[7] To the extent that they also argue that statutory damages are not available because U2 is not a copyright owner, the defendants simply ignore the portion of the Copyright Act that defines "Copyright owner" as the owner of "any one of the exclusive rights comprised in a copyright." 17 U.S.C. § 101. Although the defendants attempt to re-argue the issue of whether U2 demonstrated its chain of title to the copyrights in this case, the defendants fail to draw this Court's attention to any evidence they produced on this point

---

[6] To the extent that the defendants argue that there is a higher burden of proof for contempt of court, the plaintiff established the defendants' contemptuous conduct through overwhelming, uncontested evidence.

[7] Section 408(a) provides:
[T]he owner of copyright <u>or of any exclusive right in the work</u> may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708. Such registration is not a condition of copyright protection.
17 U.S.C. § 408(a) (emphasis supplied).

during summary judgment that this Court may have overlooked. The defendants do not take issue with the finding that, through their failure to respond to requests to admit, they were properly deemed to have admitted that U2 has the exclusive distribution rights for 24 titles.

In their reply on this motion, defendants also make a number of other arguments for the first time.[8] It is therefore unnecessary to address these arguments. Finally, to the extent that the defendants claim that they deserved an evidentiary hearing, given their consistent refusal to participate in the discovery process during this case, and their failure during summary judgment practice to present admissible evidence that raised a question of fact, such a claim is frivolous.

**CONCLUSION**

The defendants' motion to amend, modify, or withdraw the judgment pursuant to Rule 59, Fed. R. Civ. P., is denied.

SO ORDERED:

Dated: New York, New York
September 12, 2005

_____
DENISE COTE
United States District Judge

---

[8] These arguments include: (1) that opposing counsel misrepresented the defendants' import purchases, stating that they were $500,000, when they were actually $439,247; (2) that U2 must not have had authority to register copyrights because it sometimes assigned "fixed term" licenses to other companies; (3) various arguments relating to the testimony of Alan Huie. In any event, these arguments are facially irrelevant or without merit.